[Cite as *State v. Brown*, 2022-Ohio-2752.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210355 |
| | | TRIAL NO. B-2002726 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| RICKEY BROWN, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed, Appellant Discharged in Part, and Cause Remanded

Date of Judgment Entry on Appeal: August 10, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

**Zayas, Presiding Judge.**

{¶1}    Rickey Brown appeals his convictions for having a weapon while under a disability, the aggravated robbery of Sharlene Johnson with a specification, and the robbery of Holly Smothers.  Brown argues that the trial court erred by denying his motion for a new trial and receiving his testimony while he was in handcuffs, his trial counsel was ineffective for failing to request a continuance to investigate critical, surprise evidence, and allowing him to testify in handcuffs, his robbery conviction was not supported by sufficient evidence, and all of his convictions were against the manifest weight of the evidence.  For the following reasons, we reverse the judgment of the trial court, discharge Brown on the robbery count, and remand the cause to the trial court for a new trial consistent with this opinion.

### Factual Background

{¶2}    Rickey Brown was indicted for having weapons while under a disability, two counts of aggravated robbery with specifications and two counts of robbery.  Counts two and three named Sharlene Johnson as the victim, and counts four and five named Holly Smothers as the victim.  The charges arose when Smothers arranged to purchase a vehicle for $600 from "Danny Buckley," who was later identified as Brown.  When Smothers arrived with Johnson, the seller brandished a gun and took the money. Brown pled not guilty and proceeded to a bench trial.

{¶3}    Brown had given notice that he intended to present an alibi defense.  According to the state's discovery response, "Sharlene Johnson and Holly Smothers positively identified the Defendant through photo line-ups as the individual who pulled the gun on them with 100% certainty."

{¶4}    During opening remarks, the prosecutor stated that Officer Kaeser was

informed that the seller's name was Danny Buckley, and Kaeser forwarded the name to Real Time Crime, a unit that uses their information systems to determine a suspect's real name and procure a photograph. The prosecutor further explained that after Real Time Crime determined that Danny Buckley was actually Rickey Brown and provided a photograph of Brown, a photographic lineup was assembled with that photo. That lineup was shown to both Johnson and Smothers who identified Brown as the perpetrator. After viewing the lineup, the prosecutor relayed that Smothers looked up Brown's Facebook page and printed photos from his Facebook page and gave them to Detective Kaeser.

{¶5}   The state's first witness was Officer Nicholas Ivanovic, who had responded to Lexington Street in Avondale on the day of the robbery at around 4:30 p.m. Smothers and Johnson described the robber as a 20-year-old black male, wearing a black skull cap, black t-shirt and black shorts, who was approximately five feet five inches tall and skinny, weighing about 120 pounds. Smothers showed Ivanovic part of the conversation she had had with the seller through the Letgo app on her cell phone, and he took a photograph of her cell phone.

{¶6}   The app showed that Smothers had arranged to purchase a 2001 Toyota Corolla CE with a listed price of $800 from a seller named Danny Buckley. At the top of the app, it said Buckley's account was verified with Google, and showed that he was a member since 2020 with a zip code of 45229. Smothers had contacted the seller that morning and offered $600 for the car. The seller accepted.

{¶7}   After Ivanovic filed the police report, the case was assigned to the investigative unit.

{¶8}   Detective Jason Horner testified that he had shown the lineups to

Smothers and Johnson separately. Both women positively identified Brown. Smothers was 99 percent positive that Brown was the robber, and Johnson was 100 percent positive.

{¶9} Smothers testified that she had found a used Toyota Corolla to purchase on Letgo from a seller named Danny Buckley. She communicated with the seller via the app and the telephone and negotiated a purchase price of $600. Smothers arranged to meet the seller on May 3, 2020, on Hutchins Avenue. Smothers asked Johnson to drive her to the meeting.

{¶10} Smothers had exchanged phone numbers with the seller through the app and had spoken with him twice over the phone. When they arrived on Hutchins Avenue, Smothers spoke with the seller on the phone, and he told her to meet him on Lexington Avenue, the next street over. While she spoke with the seller on the phone, they drove to Lexington. Smothers saw a man waving on the street, and he told her that he was the seller and that he wanted to show her the car.

{¶11} The seller approached the passenger side of the car, and Smothers spoke with him. He said he was going to get the car, so Smothers got out of the car and gave the money to Johnson. Smothers was going to go look at the car and did not want to take the money with her. When she turned around, she saw the seller holding a gun. Smothers testified that he never pointed the gun at her. He leaned down into the car and pointed the gun at Johnson, and she gave him the $600. He ran towards Hutchins Avenue, and they called the police.

{¶12} When Smothers was asked to show the conversation she had with the seller on the Letgo app, she was unable to do so. Smothers explained that the transaction was done on her old cell phone which she no longer owned.

{¶13} Then Smothers explained how she discovered the following day that Danny Buckley's account was tied to Brown's Facebook page. Smothers stated that when a person uses a Gmail or email address on the Letgo app, the app will take you to the person's Facebook page. When she went into the email address on Danny Buckley's account on the app, she found Brown's Facebook page. Smothers found Brown's Facebook page, printed several photographs from the Facebook page, and gave the photos to Kaeser. Smothers admitted that she had shared the photos with Johnson before they identified Brown in the police lineup because the photos "looked exactly like him."[1]

{¶14} When she decided to buy a Toyota, Smothers only looked at the Corolla listed on Danny Buckley's advertisement. The day after the robbery, she found a photo of the same green car posted on the Letgo app in a different advertisement.

{¶15} Smothers further testified that she had a clear, unobstructed view of the seller. After she stepped out of the car, the seller leaned into the passenger window, and she was standing right next to him. Although Smothers testified that she was close enough to see any tattoos on his neck and arms, she did not see any tattoos on him.

{¶16} Johnson testified she accompanied Smothers to purchase the car. The robbery occurred on a Sunday at approximately 4:20 in the afternoon. Johnson drove to Hutchins Avenue, and after they arrived, Smothers called the seller. The seller directed them to Lexington during the conversation. Johnson drove around the corner to Lexington and saw the seller standing in the middle of the street waving. The seller was thin, but Johnson did not know how tall he was.

{¶17} After he walked up to the car, he opened the back passenger door and

---

[1] Contrary to the dissent's assertion, Smothers did not testify that she immediately recognized the profile picture on the account as the robber.

started to get into the car. Then he changed his mind and stepped back. Smothers handed her the money, got out of the car, and stood on the sidewalk. Then the seller bent down, pointed the gun at her, and demanded the money. After she gave him the cash, he ran.

{¶18} Johnson thought she had called 911, but when the 911 call was played, Johnson identified the caller as Smothers. Smothers had reported that the man who robbed her was with another black man, and both were wearing black.

{¶19} Johnson confirmed that Smothers had shown her Facebook photos of Brown before she saw the lineup. She testified that the Facebook photos looked like the seller. When she initially saw the seller, he looked familiar to her. Something about his eyes and facial features looked familiar. Johnson thought she knew him, but was not sure. Johnson testified that his arms were small, and his eyes were sunken. He looked young, maybe 19 or 20. She did not see any tattoos on him.

{¶20} Next, the state called Detective Michael Kaeser, the officer assigned to investigate the robbery. Kaeser had spoken with Smothers on the phone. Smothers told him that she had gone through social media, and she emailed him six Facebook photos and a Facebook name of RickeyTan. Smothers also told him that she had arranged to purchase a car from Danny Buckley through the Letgo app. Kaeser forwarded the Facebook information and the photograph of Smother's phone to Real Time Crime. About an hour later, Real Time Crime gave him the name of Rickey Brown with his identifying information. Kaeser called the "ID" Department and had them assemble a lineup with Brown's photo to show Smothers and Johnson.

{¶21} Smothers had also given Kaeser the phone number that she had used to speak with the seller. Kaeser obtained a search warrant based on that phone number.

The information he received in response to the warrant contained no name, no phone number, no text messages, and no list of who was called. It just showed a location and nothing else. Kaeser had never had that happen before, so he asked Smothers several times to give him her phone records. Smothers repeatedly promised to obtain the phone records but never did.

{¶22} Kaeser had also spoken with two individuals who stated that Brown was with them when Smothers was robbed. In June, Ms. Walker went to District 4 and spoke with him for five to ten minutes. In September, he obtained the phone number of Ms. Thomas from the prosecutor. Kaeser called her, and she met him for a taped interview. Thomas said that Brown and Walker were celebrating her birthday at an Airbnb on the day of the robbery. Thomas gave him the name and phone number of Ms. Cheng, the person from whom she rented the Airbnb. When Thomas spoke with her, Cheng recalled seeing a man and a woman, but could not remember what day and time. Kaeser attempted to obtain videotape from her security cameras, but Cheng only kept recordings for a few months, and four months had already elapsed.

{¶23} One of the witnesses also said that Brown had been at a restaurant called Mr. Sushi that day. Kaeser did not go to Mr. Sushi until September or October. Mr. Sushi is in Clifton, about ten to 15 minutes from where the robbery occurred. The employees he spoke with could not remember if they saw Brown in May, and they only kept their video recordings for 30-60 days. They gave him the receipts from May 3, and Kaeser spoke with a manager who may have argued with Brown, Walker, and Thomas that day. However, the manager said that he argues with so many people, he could not remember if he had argued with them.

{¶24} On cross-examination, Kaeser testified that he did not subpoena any

records from Google or Letgo regarding Danny Buckley. He identified Rickey Brown as the suspect based on the Facebook photos from Smothers, and he never spoke with Brown. Kaeser never investigated Danny Buckley and did not obtain a photo from Smothers showing the Letgo communications between the seller and her. Kaeser confirmed that he received no information about the telephone number he obtained from Smothers. Kaeser did not follow-up with the cell phone company, and he did not issue a subpoena for Smothers's phone records or any records from Letgo.

{¶25} After Kaeser's testimony, the state rested, and Brown called three alibi witnesses. The first witness was Shemaiyah Thomas. Thomas testified that she had known Brown for approximately ten years and had met him in high school. Thomas had rented an Airbnb to celebrate her birthday on May 3. She had planned a birthday celebration, but no one was able to come, so she invited Brown and Jasmine. When she learned that Brown was accused of a robbery that afternoon, she contacted the person from whom she rented the apartment through Airbnb. Thomas identified the printouts of her communications with the owner.

{¶26} The exhibit showed that Thomas had rented an apartment on West 15th Street in Over-the-Rhine, with a check-in time of 3:00 p.m. on May 2 and a check-out time of 10:00 a.m. on May 4. Thomas had sent the owner a photo of Brown. The owner responded that she only retained her video recordings for two months, so the video was no longer available.

{¶27} Thomas also provided a photo of her phone showing the text message exchange she had with Brown that day. The screenshot showed the following conversation:

Thomas at 3:44 p.m.: Now got a cover over me so I hope that's not a

problem or should I throw my dress on?

Brown at 3:45 p.m.:  You good.

Thomas at 3:49 p.m.: Ok.

Thomas at 3:59 p.m.: 116 west 15 street Cincinnati Ohio

Brown at 4:46 p.m.:  Got the food coming now

Brown at 4:52 p.m.:  We here

**{¶28}** After Brown and Jasmine arrived, they gave her flowers and birthday cards, and her food that they had picked up from Mr. Sushi.  When she checked her food order, she noticed it was wrong, so the three of them drove back to Mr. Sushi.  After a 30 minute debate with the manager, Thomas's order was fixed.  Thomas identified a photo that was taken at 5:48 p.m. showing her holding the corrected food order.  They returned to the Airbnb where they remained for the rest of the evening.  Brown left at approximately 9:00 or 9:30 p.m.  He was driving a green car that day.

**{¶29}** On cross-examination, Thomas described Brown as stocky.  Thomas spoke with Brown on the phone around 4:00 p.m. before he arrived.  At the time, Brown said he was at Kroger, and she asked him to pick up something for her.  While they spoke, she could hear people in the background and cash registers ringing.  To her, it sounded like he was at a Kroger.

**{¶30}** In response to a question from the court, Thomas testified that Brown was wearing jeans and a black shirt.

**{¶31}** The next witness was Jasmine Pennington, who had known Brown for eight years.  On May 3, she was with Brown for most of the day.  Brown and his girlfriend Jayla Walker picked her up at around 3:00 p.m.  After he picked her up, they drove to Avondale to drop off his girlfriend.  When asked if Brown had parked on

Hutchins Avenue and left the car for a few moments, she said, "No." When they dropped Walker off, Brown stopped, parked the car, and Walker got out of the car and went into her home.

**{¶32}** After they dropped Walker off at her home, Brown and she went to Kroger to purchase a gift for Thomas. They bought flowers, a cupcake, and a card. Then they went to Mr. Sushi's to pick up Thomas's food. Thomas had placed an online order at Mr. Sushi, and the two of them went to Clifton to pick it up. Brown paid for the order with his debit card, and they drove to the Airbnb. Pennington was with Brown the entire time.

**{¶33}** Jayla Walker, Brown's girlfriend, testified that she lived at 538 Rockdale Avenue with Brown. That morning, Brown and she picked up Pennington from work and drove her to her mom's house so she could pick up something. While they were waiting, Brown got out of the car and was shooting a basketball.

**{¶34}** At that time, Brown was driving a Toyota Corolla. Walker identified photos of the car that she had taken because he was trying to sell the car. At the end of May, the car broke down, and Brown sold it to a man that junks cars. Brown had posted it for sale online. When the listing expired, Brown sold it to the junk man.

**{¶35}** Brown testified that when he woke up that morning, he started texting with Thomas. Thomas had rented an Airbnb to celebrate her birthday with her friends, but her friends had canceled. Brown said he would attend.

**{¶36}** Brown and Walker picked up Pennington from work and drove her to her mom's house. They were there for 15 or 20 minutes. Then, Brown dropped Walker off in Avondale and went to Kroger with Pennington. While they were shopping at Kroger, Thomas called and asked him to pick up her food order from Mr. Sushi. Brown

and Pennington finished their shopping and drove to Mr. Sushi's to pick up the order. Brown paid for the food.

**{¶37}** Brown identified the photo of his debit card and matched it to a transaction on the report that Kaeser had obtained from Mr. Sushi. Brown also identified the payment to Mr. Sushi on his debit card transaction report. Neither report included the time that the transaction occurred.

**{¶38}** After they left Mr. Sushi, Brown drove to the Airbnb. Brown texted Thomas at 4:26 p.m. to inform her that they had picked up the food and were on their way. Initially, Brown could not find the building or a parking spot. After they parked, Brown and Pennington walked to the Airbnb, and Thomas escorted them to the apartment. At some point, Thomas realized that her food order was incorrect, so all three of them went back to Mr. Sushi.

**{¶39}** At the time, Brown owned a 1998 Toyota Corolla LE sedan that he was trying to sell. He advertised the car for sale on Facebook Market and on his Letgo page. Brown had created a Letgo account in 2018 in his name. He first listed the car in April with a price of $1,200. Brown eventually sold the car to John Lake. Brown submitted a certified copy of the title showing that he had transferred the title to Lake on May 28, 2020.

**{¶40}** Brown denied creating a Letgo account in the name of Danny Buckley or communicating with Smothers via Letgo. Only two people had responded to his ad, and both were male. Brown testified that he had never seen or spoken with Smothers or Johnson.

**{¶41}** Brown testified that he was five feet eight inches tall and weighed 150 pounds. Brown had tattoos covering both of his arms since 2017, and he displayed his

tattoos for the court.

{¶42} On cross-examination, Brown admitted that he was near where the robbery occurred when he drove Walker home between 3:00 and 4:00 p.m. By 4:26 p.m., Brown had already been to the Clifton Kroger and Mr. Sushi, and was on his way to the Airbnb.

{¶43} On redirect, Brown again denied having a Letgo account in the name of Danny Buckley. Brown explained that the photo of Smothers's phone showed that Buckley's account was verified by Google. He further explained that a Letgo account can be created and verified by a Gmail account or a Facebook account, and Brown created his Letgo account with his Facebook page and not a Google Gmail account.

{¶44} The trial court found that Smothers and Johnson arranged to purchase a car sometime after 4:00 p.m. and were robbed by a black male. Both witnesses identified Brown as the robber. The trial court further stated that Brown admitted that he was selling the same vehicle that Smothers negotiated to buy. Based on these facts and the credibility of the witnesses, the trial court found Brown guilty of having weapons while under a disability, aggravated robbery of Johnson with a specification, and robbery of Smothers. Brown was found not guilty of robbery of Johnson and aggravated robbery of Smothers. The court ordered a presentence investigation and continued the sentencing.

{¶45} However, we note that some of the factual findings were not supported by the record. There was no testimony regarding the meeting time to purchase the car, but the robbery occurred around 4:20 p.m. Two black males participated in the robbery, not one. Brown did not admit that he was selling the same car that Smothers negotiated to buy. Rather, Brown testified that he owned and sold a 1998 Toyota

Corolla LE, and he provided the title. The car that Smothers negotiated to buy was a 2001 Toyota Corolla CE.

{¶46} While the sentencing was pending, Brown filed a motion and a supplemental motion for a new trial pursuant to Crim.R. 33(A)(1)-(4) alleging an irregularity that prevented a fair trial, misconduct, surprise, and insufficient evidence. Specifically, Brown contended that the state committed *Brady* violations by failing to disclose that Smothers obtained Brown's Facebook information after conducting her own investigation, she provided the photos identifying Brown to the police, the photos she found were used to create the lineup, she provided Brown's identifying information to the police, and Smothers and Johnson had seen the Facebook photos of Brown prior to the police lineup. Moreover, Kaeser did not issue a warrant to Letgo regarding the Danny Buckley account, and did not follow up with Verizon Wireless when the information provided in response to the search warrant of the phone number did not contain any information.

{¶47} Additionally, Brown argued that had this information been disclosed to him pretrial, he could have procured an expert on witness misidentification, challenged the police lineups as impermissibly suggestive, and challenged Smothers's investigation. The information was material because Smothers's investigation led to the identification of Brown as a suspect. The identification was the sole evidence against him.

{¶48} The trial court treated the motion as based on newly discovered evidence. The court denied the motion concluding that even if the defense had known the extent of the independent investigation by Smothers, the trial would not have resulted in a different outcome

**{¶49}** Brown appeals contending that the trial court erred by denying his motion for a new trial and receiving his testimony while he was in handcuffs, his trial counsel was ineffective for failing to request a continuance to investigate critical, surprise evidence, and allowing her client to testify in handcuffs, his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. For ease of discussion, we address the assignments of error out of order.

### Sufficiency of the Evidence

**{¶50}** In his fourth assignment of error, Brown contends the conviction for robbery of Smothers was not supported by sufficient evidence because the money was not taken from Smothers, and Smothers was not threatened.

**{¶51}** In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶52}** R.C. 2911.02(A)(2) sets forth the offense of robbery, and states: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another." A robbery is committed when the threat of harm "intimidates the victim into complying with the command to relinquish property without consent." *See State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 23.

**{¶53}** As this court has previously explained, when no property is taken from a person, a threat of harm used against that person does not establish a robbery. *See*

14

*State v. Gamble*, 1st Dist. Hamilton No. C-960071, 1996 Ohio App. LEXIS 4909, *9-10 (Nov. 13, 1996). *See also State v. Rojas*, 3d Dist. Auglaize No. 2-03-07, 2003-Ohio-5118, ¶ 11 (holding "we find as a matter of law that a separate theft offense must be attempted or committed for each count of aggravated robbery").

**{¶54}** Here, the evidence established that Brown took $600 from Johnson while pointing a gun at her. Although Smothers saw the weapon, and the gun was brandished in close proximity to her, no evidence was presented that Smothers relinquished the money due to the threat of harm. While the money may have belonged to Smothers, the money was taken from Johnson under the threat of harm. Consequently, we sustain the fourth assignment of error.

### Motion for New Trial

**{¶55}** In his first assignment of error, Brown argues that the trial court erred by denying Brown's motion for a new trial because the crucial evidence tying him to the robbery was not disclosed to Brown prior to trial.

**{¶56}** A new trial may be granted under Crim.R. 33(A) on the ground of an irregularity or abuse of discretion that prevented a fair trial, misconduct of a prosecutor or state's witness, accident or surprise, or when "the verdict is not sustained by sufficient evidence." Crim.R. 33(A)(1), (A)(2), (A)(3), and (A)(4).[2] Generally, a motion for a new trial is directed to the sound discretion of the trial court, and the court's decision will not be reversed on appeal unless the court abused that discretion. *See State v. Williams*, 43 Ohio St.2d 88, 330 N.E.2d 891 (1975), paragraph two of the syllabus. "However, when the motion for a new trial alleges prosecutorial

---

[2] The version of Crim.R. 33(A)(4) in effect at the time the motion was filed allowed for a new trial when "the verdict is not sustained by sufficient evidence." The rule was amended in July 2021 to remove that language.

15

misconduct, we undertake a due process analysis to determine whether the misconduct of the prosecutor deprived the defendant of his due process right to a fair trial." *Id.*, citing *State v. Johnston*, 39 Ohio St.3d 48, 59-60, 529 N.E.2d 898 (1988). Crim.R. 33 "requires that a determination be made as to whether a defendant's substantial rights have been materially affected." *Johnston* at 59.

{¶57} Where the claimed misconduct is that the prosecutor did not disclose properly discoverable evidence, the *Johnston* court noted:

> * * * the usual standards for new trial are not controlling because "the fact that such evidence was available to the prosecution and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial." *United States v. Kelly* (C.A.D.C.1986), 790 F.2d 130, 135, citing *United States v. Agurs* (1976), 427 U.S. 97, 111. For that reason, the defense does not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal, the standard generally used to evaluate motions filed under Crim.R. 33. *United States v. Agurs*, supra.

*Johnston* at 60.

{¶58} "By withholding evidence favorable to the accused, the prosecution violates the defendant's due process right to a fair trial where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecutor." *Id.*, citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The responsibility to disclose material evidence extends to the police. *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

**{¶59}** Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Johnston* at 61, quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1984). Put differently, "the relevant inquiry is not whether a trial with the undisclosed evidence would have yielded a different verdict, but whether the evidence, 'considered collectively,' 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *State v. Carusone*, 1st Dist. Hamilton No. C-140737, 2015-Ohio-4397, ¶ 7, quoting *Kyles v. Whitley*, 514 U.S. 419, 434-436, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

**{¶60}** Although the trial court concluded that the motion was based on newly discovered evidence pursuant to Crim.R. 33(A)(5), the motion alleged prosecutorial misconduct for *Brady* violations under Crim.R. 33(A)(2) for withholding evidence. The evidence that was withheld was that Smothers, while conducting her own investigation, determined that Danny Buckley's Letgo account was linked to Brown's Facebook page. The discovery of this link led Smothers to identify Brown as the perpetrator after viewing his Facebook photos. Smothers printed the photos and showed them to Johnson before the police lineup. The photos were then given to Kaeser who used the photos to generate a lineup.

**{¶61}** It is clear from the prosecutor's opening statement and Kaeser's testimony that Kaeser was aware of Smothers's investigation and identification of Brown and did not inform the prosecutor. In his opening remarks, the prosecutor stated that the Real Time Crime unit's investigation revealed that Danny Buckley was

an alias for Rickey Brown. Based on this investigation, a police lineup was conducted, and both Smothers and Johnson identified Brown. After identifying Brown as the suspect, Smothers went to Brown's Facebook page and printed the photos. Although the prosecutor did not act in bad faith, the inquiry is whether Brown's due-process rights were violated by the withholding of the evidence. *Johnston*, 39 OhioSt.3d at 60, 529 N.E.2d 898; *Brady*, 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215.

**{¶62}** Smothers identified Brown as the robber based upon her own investigation. This evidence was material because the identification of Brown as the robber was the sole evidence used to convict him. In finding Brown guilty, the trial court relied primarily on the identifications made by Smothers and Johnson. After viewing the Facebook photos of Brown, both positively identified him in the police lineup, although their initial descriptions of the robber with the gun did not match Brown, and neither noticed the tattoos covering both of his arms.

**{¶63}** Although Smothers showed the pictures to Johnson "because I was, like, this is what - - it looked exactly like him," she did not testify that "she immediately recognized the profile picture on the account as the robber" as the dissent claims.

**{¶64}** Thus, the question for this court is whether confidence in the verdict is undermined by the state's failure to disclose the evidence concerning Smothers's finding that Brown's Facebook page was linked to Danny Buckley's account which prompted Smothers's and Johnson's identifications of Brown as the perpetrator.

**{¶65}** The trial court's contention that Brown admitted to selling the same car that Smothers attempted to buy is not supported by this record. Accordingly, identification was the sole issue of dispute in this case. Brown provided three witnesses, text messages, and two transaction reports to establish that he was at

Kroger's and Mr. Sushi in Clifton at the time of the robbery. Brown was wearing jeans that day, and the person who committed the robbery was wearing shorts. The robber was accompanied by another black male, and Brown was with a female.

{¶66} Smothers testified that Brown's Facebook page was linked to Danny Buckley's account, but could not articulate how she made that determination. Smothers stated that she found the same car for sale the following day, but the car that Brown listed for sale was a 1998 Toyota Corolla LE, not a 2001 Toyota Corolla CE. Danny Buckley's account had been verified by Google, and the record is unclear as to how Smothers determined Buckley's account was linked to Brown's Facebook page.

{¶67} For these reasons, we find that our confidence in the trial court's verdict is undermined, and Brown's substantial rights were materially affected. Had the state disclosed Smother's investigation leading to her identification of Brown as the robber, Brown would have had an opportunity to challenge both the alleged link to his Facebook page and the reliability of the identification.

{¶68} The dissent suggests that the failure to disclose Smothers's investigation could have been raised and analyzed as a discovery violation. However, this issue was not raised or briefed by either party in the trial court or on appeal. The state has consistently argued that it met its disclosure obligations by disclosing the Facebook photos along with the names of the witnesses. Errors not briefed can be considered abandoned by an appellate court. *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390 (1988). Appellate courts should not "formulate legal arguments on behalf of the parties, because 'appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them.' " *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-

4034, 19 N.E. 3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). Therefore, we should not raise an issue that was not properly preserved, raised or briefed by the parties.

{¶69} Accordingly, we sustain the assignment of error. Our disposition of this assignment of error renders the second, third, and fifth assignments of error moot.

## Conclusion

{¶70} In conclusion, we reverse the conviction for the robbery of Smothers, and discharge Brown from further prosecution on that charge. We also reverse the convictions for having a weapon while under a disability and the aggravated robbery of Johnson, and remand the cause for a new trial on those charges, consistent with this opinion.

Judgment reversed, appellant discharged in part, and cause remanded.

**BOCK, J.,** concurs.
**WINKLER, J.,** dissents.

**WINKLER, J.,** dissenting.

{¶71} Because I would hold that Brown's robbery conviction with respect to Smothers was supported by sufficient evidence, and that Brown was not entitled to a new trial with respect to his remaining convictions under Crim.R. 33 and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), I dissent.

### Sufficient Evidence Exists that Brown Robbed Smothers

{¶72} The trial court found Brown guilty of robbing Smothers under R.C. 2911.02(A)(2), which provides: "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]"

20

**{¶73}** The state's evidence at trial showed that Johnson drove Smothers to Lexington Street in Avondale so that Smothers could purchase a Toyota Corolla for $600 from a person named "Danny Buckley," who had advertised the vehicle on an online marketplace app called "Letgo." When Smothers and Johnson pulled onto the street, they saw a man waving his hands. Johnson parked the vehicle on the street. The man approached the passenger side of the vehicle and had a quick discussion with Smothers. Smothers proceeded to exit from the vehicle and handed $600 cash to Johnson. Smothers exited from the car, but she was still standing near it when the man pulled out a gun. He pointed the gun at Johnson and told her to give him the money. Johnson complied, and the man ran.

**{¶74}** After the robbery, Smothers was able to use the Letgo app to connect "Danny Buckley's" account to Facebook, and a Facebook account for "RickeyTan" appeared. Smothers immediately recognized the profile picture on "RickeyTan's" account as the robber. Smothers gave this information to police. Police were then able to use the Facebook profile information for "RickeyTan" to identify Brown as a potential suspect. The police included Brown in a photo lineup, and Johnson and Smothers both separately identified Brown as the man with the gun. Smothers and Johnson both positively identified Brown at trial.

**{¶75}** The majority holds that Johnson, and not Smothers, was the sole victim of the robbery offense, because Johnson was actually holding Smothers's cash at the moment Brown brandished the gun. The majority's analysis is incorrect as a matter of law, because Smothers was the owner of the stolen cash, Brown's intended target, and also in close proximity to Brown when he brandished the gun, and thus Smothers is a victim under R.C. 2911.02(A)(2).

21

{¶76} A legal distinction exists between a robbery victim and a mere "bystander." *See State v. Rojas*, 3d Dist. Auglaize No. 2-03-07, 2003-Ohio-5118, ¶ 7. In *Rojas*, the defendant pulled out a gun and demanded money from a man while in the bathroom of an interstate rest area. A janitor happened to stumble upon the robbery in progress, and the defendant ordered the janitor into the utility closet. The defendant was convicted of two counts of aggravated robbery under R.C. 2911.01(A)(1), one for the janitor and one for the other man. The *Rojas* court held that the defendant's conviction for aggravated robbery with respect to the janitor was based on insufficient evidence, because the defendant did not attempt to commit a theft offense against the janitor.

{¶77} Smothers is not a person who was simply in the wrong place at the wrong time like the janitor in *Rojas*. Here, Brown's actions in pulling out a gun in close proximity to Johnson and Smothers constituted a threat of harm to both, and both Smothers and Johnson had a possessory interest in the cash—Smothers as an owner of the cash, and Johnson as the person in possession of the cash. *See* R.C. 2913.01(D) (defining "owner" of property for purposes of the theft statute as "any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful.").

{¶78} Brown targeted Smothers on the Letgo app, so Brown knew that Smothers, and not Johnson, had been the prospective purchaser of the car. Additionally, Brown must have seen Smothers hand the cash to Johnson prior to getting out of the car, otherwise Brown would have demanded the cash from Smothers.

Smothers testified that Brown was standing only a couple of feet away, so Brown would have been able to see the exchange of cash from Smothers to Johnson.

**{¶79}** Because the evidence presented at trial shows that Brown brandished a handgun in close proximity to Smothers, with the purpose of depriving Smothers of her property, i.e., cash, sufficient evidence exists to convict Brown of robbery with respect to Smothers.

### Motion for a New Trial under *Brady* Properly Denied

**{¶80}** I also disagree with the majority's conclusion that the trial court erred in denying Brown's motion for a new trial under Crim.R. 33 based upon *Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

Smothers's Investigation is Not *Brady* Material

**{¶81}** In order for a defendant to succeed on a claim for a *Brady* violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *State v. Bethel*, Slip Opinion No. 2022-Ohio-783, ¶ 19, quoting *Strickler v. Greene*, 527 U.S. 263, 281-282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

**{¶82}** Brown alleges that the state wrongfully withheld evidence that Smothers used the Letgo app to connect the account of "Danny Buckley" to the Facebook account of a person named "RickeyTan." When Smothers viewed the Facebook account of "RickeyTan," she immediately recognized the profile picture on the account as the robber. Smothers then gave this information to police, and police were able to use the Facebook profile to identify the defendant, Rickey Brown.

**{¶83}** The majority concludes that the state wrongfully withheld information from Brown that Smothers had conducted her own investigation through the Letgo app, which linked to Brown's Facebook page. But nothing about this evidence is favorable to Brown, and, in fact, it is just the opposite. Where the evidence is inculpatory, not exculpatory, *Brady* does not apply. *United States v. Lewis*, 6th Cir. Nos. 19-6148, 19-6186, 19-6253, 19-6254 and 19-6352, 2022 U.S. App. LEXIS 2384, *36 (Jan. 25, 2022). Thus, Brown has not shown that the evidence was *Brady* material.

**{¶84}** Brown also has not shown that the state withheld information from him to his prejudice. In discovery, the state provided Brown with the witnesses' names, the Facebook photographs, and a screenshot of Smothers's conversation with "Daniel Buckley" on the Letgo app. Brown argues on appeal that had he known about the connection between Facebook and the Letgo app, he could have subpoenaed records from Letgo to uncover the origins of the "Danny Buckley" account. However, Brown already knew about the Letgo app, and the "Daniel Buckley" account, because the state had provided the screenshot from the victim's phone in discovery. Therefore, Brown's *Brady* claim fails.

<u>Allegedly Exculpatory Evidence Available at Trial</u>

**{¶85}** Even if Smothers's use of the Letgo app to uncover Brown's identity was somehow exculpatory, no *Brady* violation exists where the evidence was available during trial.

**{¶86}** "The rule of *Brady* * * * arguably applies in three quite different situations. Each involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427

U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Relying on *Agurs*, the Ohio Supreme Court held that where "alleged exculpatory records were presented during the trial, there exists no *Brady* violation requiring a new trial." *State v. Wickline*, 50 Ohio St.3d 114, 116, 552 N.E.2d 913 (1990); *see State v. Marshall*, 1st Dist. Hamilton Nos. C-190748 and C-190758, 2021-Ohio-816, ¶ 12 ("[t]here can be no *Brady* violation when the exculpatory information was provided to the defense before or even during the trial").

**{¶87}** The allegedly exculpatory evidence that Smothers performed her own investigation via the Letgo app to ultimately identify Brown was disclosed during Smothers's testimony at trial. Therefore, no *Brady* violation exists.

<u>Less Drastic Remedy Available to Brown</u>

**{¶88}** Finally, the majority errs in reversing Brown's conviction and ordering a new trial where Brown could have raised the alleged *Brady* violation during trial and requested a less drastic remedy.

**{¶89}** Crim.R. 16(L)(1) provides:

The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

25

**{¶90}** The Ohio Supreme Court held that the defendant was not entitled to a new trial based on an alleged *Brady* violation where the defendant had less drastic means available under the rules regulating discovery. *Wickline*, 50 Ohio St.3d at 116-117, 552 N.E.2d 913. Here, Brown could have relied on Crim.R. 16 and requested a continuance or objected to Smothers's testimony. Instead, Brown waited until after the trial court's guilty findings to raise his *Brady* claim, even though Brown became aware of Smothers's alleged surprise trial testimony during the state's case in chief.

**{¶91}** For these reasons, the trial court properly denied Brown's motion for a new trial.

### Conclusion

**{¶92}** In conclusion, Brown's robbery conviction with respect to Smothers was supported by sufficient evidence, and the trial court properly denied Brown's motion for a new trial under *Brady*. The sole issue in this case at trial was the victims' identification of Brown as the perpetrator. The trial court heard all of the evidence, including the procedures used for identification and any alleged infirmities, and the trial court concluded that Brown was guilty beyond a reasonable doubt. I would overrule Brown's assignments of error and affirm the judgment of the trial court. I respectfully dissent.

Please note:

The court has recorded its own entry this date.