[Cite as *State v. Brown*, 2024-Ohio-2148.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210355 |
| | | TRIAL NO. B-2002726 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| RICKEY BROWN, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 5, 2024


*Melissa A. Powers,* Hamilton County Prosecuting Attorney, and *Paula Adams,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp,* for Defendant-Appellant.

**ZAYAS, Judge.**

**{¶1}** This matter is before us on remand from the Supreme Court of Ohio, which reversed this court's opinion in *State v. Brown*, 2022-Ohio-2752, 198 N.E.3d 111 (1st Dist.) ("*Brown I*"), after determining that the evidence was sufficient to support his robbery conviction, and that he waived any *Brady* claim by not seeking a continuance or mistrial. *State v. Brown*, Slip Opinion No. 2024-Ohio-749, ¶ 28-29. The Supreme Court has directed us to address the second, third, and fifth assignments of error that we initially concluded were moot.

## Factual and Procedural Background

**{¶2}** After a bench trial, Rickey Brown was convicted of having weapons while under a disability, two counts of aggravated robbery with specifications and two counts of robbery. *Brown I* at ¶ 1. The charges arose when Holly Smothers arranged to purchase a vehicle for $600 through the online app Letgo from "Danny Buckley," who was later identified as Brown. *Id.* at ¶ 9. When Smothers arrived with her friend Sharlene Johnson Bryant, Brown brandished a gun and took Smothers's money, which Bryant was holding. *Id.* at ¶ 11.

**{¶3}** "The next day, Smothers went to the Letgo app and found the email address connected with the Danny Buckley Letgo account. She then found a Facebook account associated with the same email address. The Facebook account was under the name Rickey Tan." *Brown*, 2024-Ohio-749, at ¶ 7. "Smothers sent the Facebook information and photographs from the Facebook account to the case detective. She also showed the Facebook photos to Bryant. From the Facebook information and photos, the police department's intelligence unit was able to identify the man as Rickey Brown." *Id.* at ¶ 8.

**{¶4}** "The Facebook photos were disclosed during discovery, but the way they were obtained was not. Although the police knew about Smothers's independent investigation prior to trial, the prosecutors handling the case apparently did not learn until trial that Smothers had provided the Facebook photos to the police." *Id.* at ¶ 11. "Smothers's detective work came out during the state's direct examination of her. Instead of moving for a mistrial or requesting a continuance, Brown's attorney chose to use Smothers's sleuthing to attempt to discredit the victims' identifications and the police investigation." *Id.* at ¶ 12. Brown's attorney also "cross-examined the department's case detective about relying on the Facebook information obtained from Smothers and failing to conduct a more thorough investigation of his own." *Id.* at ¶ 13.

> After the state rested, the defense put on an alibi case. First, Shemaiyah Thomas testified (and presented documentation to confirm) that May 3 was her birthday and that she had rented an Airbnb for that evening to celebrate there with Brown and Jasmine Pennington. Text messages with Brown corroborated Thomas's testimony that Brown and Pennington arrived at the Airbnb at 4:52 p.m., and Thomas testified that the three of them spent the remainder of the day together. Moreover, prior to Brown's arrival at the Airbnb, Thomas talked to him on the phone while he and Pennington were at Kroger purchasing birthday items, and Thomas could tell where they were because of the background noises. Pennington also testified that Brown was wearing jeans on the day in question (unlike the man with a gun, who was reported to have been wearing black shorts).

Pennington testified next. She confirmed that starting at about 3:00 p.m. on May 3, she and Brown went to Kroger, then to Mr. Sushi, and then to the Airbnb. They briefly left the Airbnb together to return to Mr. Sushi when they realized that there was an error with the order that needed to be corrected. Pennington testified, in short, that she was with Brown in the car and at Kroger around the time of the robbery.

Finally, Brown testified that he did not rob Smothers or Bryant. He testified, consistently with Pennington and Thomas, that he and Pennington went to Kroger and then to Mr. Sushi. He presented records from his debit card showing that he paid for food at Mr. Sushi on May 3. He also testified that the car he had attempted to sell on Letgo was a 1998 Toyota Corolla, not a 2001, and that his Letgo profile was under his name, Rickey Brown—not "Danny Buckley." In addition, he provided title records showing that he had owned and later sold a 1998 Toyota Corolla. He also pointed out that he is not 5'5" and 120 pounds but is 5'8" and was 150 pounds at the time of the robbery (he was 170 pounds by the time of trial). He further demonstrated the extensive tattoos on his arms. Finally, Brown testified that he had pled guilty to burglary in the past, because he had committed it. However, he maintained that he did not commit this robbery.

The trial judge found Brown guilty of one count of aggravated robbery (of Bryant), one count of robbery (of Smothers), and one count of having a weapon while under disability.

*Id.* at ¶ 49-52 (Brunner J., concurring in judgment only).

{¶5} "About two weeks [after the verdict], Brown filed a motion for a new trial. The motion asserted that the state violated *Brady* by not disclosing that Smothers had conducted her own investigation and by not revealing that both Smothers and Bryant had viewed the Facebook photos prior to the photo lineups." *Id.* at ¶ 14.

{¶6} This court reversed, "finding insufficient evidence that Brown robbed Smothers because it was undisputed that Brown took the money from Bryant, not Smothers." *Brown I*, 2022-Ohio-2752, at ¶ 50-54. We also held that the trial court erred in denying Brown's motion for a new trial. *Id.* at ¶ 67. The state appealed our opinion to the Ohio Supreme Court, which reversed our opinion and remanded this matter to us to address Brown's assignments of error that we previously determined were moot. *Id.* at ¶ 38.

## Testifying While Handcuffed

{¶7} In his second assignment of error, Brown contends that the trial court erred by receiving his testimony while he was in handcuffs.

{¶8} In a jury trial, a criminal defendant has the right to remain free of physical restraints that are visible to the jurors. *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 153. However, in a bench trial, it is presumed that judges "are able to disregard the defendant's appearing before them in shackles." *Id.* at ¶ 154. Here, Brown did not object to the restraints, and the record does not indicate that he was prejudiced by the restraints.

{¶9} Accordingly, we overrule the second assignment of error.

## Ineffective Assistance of Counsel

**{¶10}** In his third assignment of error, Brown contends that his counsel was ineffective for failing to request a continuance to investigate Smothers's testimony that his Facebook page was linked to Danny Buckley's account and for failing to object to the restraints during trial. With respect to the restraints, we have already concluded that Brown was not prejudiced by the use of restraints. He further claims that he was deprived of the opportunity to challenge Smothers's testimony regarding the connection between Danny Buckley's Letgo account and Brown's Facebook page.

**{¶11}** In considering claims of ineffective assistance of counsel, courts presume that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101. The decision whether to request a continuance after learning of surprise evidence or a surprise witness is a matter of trial strategy. *State v. Ali*, 10th Dist. Franklin No. 18AP-935, 2019-Ohio-3864, ¶ 44, citing *State v. Bailey*, 10th Dist. Franklin No. 04AP-553, 2005-Ohio-4068, ¶ 26 (failing to request a continuance after surprise witness testimony did not amount to ineffective assistance of counsel as it fell within the realm of a strategic and tactical decision). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available." *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, 787 N.E.2d 691, ¶ 90 (10th Dist.).

**{¶12}** Trial counsel cross-examined Smothers about the details of her discovery of the link between Brown's Facebook account and Danny Buckley's account. "Brown did not ask for a continuance or a mistrial at any time during the trial. Instead, once Smothers's independent investigation was revealed at trial, Brown chose to use that information at trial to attempt to discredit the reliability of the victims' photo-

6

lineup identifications and the thoroughness of the police investigation." *Brown*, 2024-Ohio-749, at ¶ 37. Thus, trial counsel's choice to cross-examine Smothers instead of requesting a continuance was a strategic decision that "may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available." *See Samatar* at ¶ 90.

{¶13} Brown also fails to show how he was prejudiced by counsel's failure to request a continuance. Trial counsel cross-examined Smothers about her investigation. Brown argues on appeal that a continuance would have allowed him to challenge and disprove Smothers's testimony regarding the connection between Danny Buckley's Letgo account and Brown's Facebook page, but this assertion is highly speculative. There is nothing in the record demonstrating that there is a reasonable probability that the result of the proceedings would have been different if trial counsel had requested a continuance. *See Ali* at ¶ 45, citing *Bailey* at ¶ 27.

{¶14} We overrule the third assignment of error.

### Manifest Weight of the Evidence

{¶15} In his fifth assignment of error, Brown argues that his convictions were against the manifest weight of the evidence.

{¶16} When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most " 'exceptional case in which the evidence weighs heavily

against the conviction.' " *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶17} Although an appellate court may review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily an initial determination for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is best able "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24, citing *Seasons Coal Co., Inc. v. Clevelan*d, 10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273 (1984).

{¶18} Here, Brown contends that the trial court's reliance on the witnesses' identification of Brown was misplaced because their identification of Brown was tainted, although he acknowledges that their testimony was credible because they believed that Brown was the robber. He further argues that the testimony of Brown and his witnesses established that Brown did not commit the robbery.

{¶19} However, a manifest-weight review requires the appellate court to "bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses." *State v. Mickens*, 10th Dist. Franklin No. 08AP-626, 2012-Ohio-5902, ¶ 30. Because the trial court was in the best position to determine the credibility of each witness, we cannot conclude this record presents a scenario where the court clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

{¶20} Accordingly, we overrule the fifth assignment of error.

## Conclusion

**{¶21}** Having overruled Brown's remaining assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry this date.